The next matter, number 22-1642, United States v. John Derrick Rosario-Merced. At this time, would counsel for the appellant please introduce himself on the record to  Good morning, Your Honor. This is the Maintenance Court. Jose Pérez on behalf of the defendant appellant, John Derrick Rosario-Merced. I'd like to be served two minutes from the model. You may. The defendant appellant in this case is seeking the dissent from the defendant. The defendant is being vacated and remanded for sentencing for two compelling reasons. First, the district judge committed procedural and substantive error by considering impermissible facts among sentencing. This case deals with two counts which we will address as the drug count, possession of indetectable amount of cocaine-based crack, and possession of a firearm in furtherance of a drug-trafficking crime under 924C. The defendant appellant does not dispute that the court properly calculated and imposed the sentence based on the drug count. The defendant appellant does contest that the court improperly varied upward when it considered facts for which the defendant appellant was not responsible for and for considering community-based factors which were completely irrelevant to the conduct for which the defendant appellant pled guilty. Based on those two factors, the court considered concerning the community-based factors. At sentencing, the district court initially started considering the firearm offense in the District of Puerto Rico and the other districts under the First Circuit. However, immediately the court recognized that it not had the statistics nor the numbers to be able to consider properly that upward variance and then turned into a consideration of the murders in the District of Puerto Rico and some other districts under the First Circuit. And based on a consideration of the murder statistics in Puerto Rico and other places within the First District, it decided to upwardly vary over 30 months of what was agreed upon concerning the defendant's suggested sentence upon pleading guilty. Mr. Phyllis, do I understand correctly that the defense proposed an upward variance? It did not. Well, partly yes. On the firearm offense count, it did. And so the debate here is about how precisely tailored and how well explained the precise amount of the upward variance imposed by the district judge was? Your Honor, the defendant appellant argues that the court's consideration on community defendant appellant plead guilty. Again, defendant appellant, in this case, plead guilty to possession of a firearm in furtherance of a drug trafficking crime. In its analysis, the district… So the murder… Because when you did that, did you talk about the murder rate specifically? Right. Is that talking about something else? Because you keep talking about it, too, but you kept talking… But you talk only about the murder rate when you're giving your explanation. That's correct. That's the one I'm addressing right now. Yes, to answer your question, Your Honor. And what's the other arbiter of also alleging his error? The other error committed by the court, considered by the court, was the fact that it concluded that there was a constructive possession of additional drugs as well as other firearms in this case in order to upwardly vary the sentencing in this particular case. Defendant appellant plead guilty to a possession of a firearm, a single possession of a firearm, and a drug trafficking crime of indetectable amount of cocaine-based crack. The court, on its own, determined… And it's important to state that there was no objection by the defense nor by the government concerning the findings of the PSR, the nature of the offense. And those are paragraphs, I believe, 19 through 26 of the sealed appendix, pages 6 and 7. There were no objections concerning the findings of the nature of the offense. However, the court, on its own, determined that there was a constructive possession, and based on an additional firearm, it enhanced, it upwardly varied, and imposed a harsher sentence. So we… Defendant appellant argues two errors. The community factors on which the district court based its upward variance, as well as the impermissible facts concerning the constructive possession of another firearm and additional drugs. Now, mind your honors, concerning the drug count, defendant appellant is not disputing nor contesting that the court properly considered the base offense level and imposed the proper sentencing bridge on the drug count, on the drug offense. Defendant appellant merely is contesting how the court adjusted the upward variance and how it got to impose a sentence nearly over 30 months. Can you just take me on the constructive possession? You're saying there was nothing in the PSR that as a factual basis for the determination that it was constructive even then? That's an argument, your honor, and based on this. The PSR talks about when the agents get to the apartment. It talks about two rooms inside the apartment. And it also talks about both the defendant appellant and the co-defendant coming out of the back areas of the apartment. But it never specifies that, number one, where the firearms were exactly located and even if the defendant appellant and the co-defendant were within the same room or within the same area. The PSR merely states that upon the agents arriving to the apartment, both the defendant appellant and the co-defendant come out from the back part from the same area. But it's not specific. The argument you're now making, you did not make an opening for it. That is correct, your honor. That is correct. So based on those factors, we believe that the sentencing in this, the upper variance imposed by the district court was improper and the penalty did not fit. Set aside, and I understand the argument about the constructive position. I'm setting that aside for the moment. The other impermissible factor is the determination that the dangerousness of the weapon is a problem and the concern is that the way the district court explained the basis for that was by relying on the murder rate, correct? Correct. So what do we do with this? Because I understand that the district court isn't saying, your client is a murderer. He's saying, I think machine guns are more dangerous. I don't have, or firearms are dangerous. I don't have the statistics on how big a problem firearms, illegal firearms are in Puerto Rico relative to other jurisdictions. But I do have the difference in the murder rate and the, I guess, unstated inference is if a substantial number of them are committed by firearms, then it stands to reason there is a very significant firearm problem in Puerto Rico. Was there an objection made to that aspect of the district court's reasoning? Not a, not a tense. So I guess we need to concede the vote. So that's, with respect to that, we're on a plain error. That is correct. And I guess the question is, why is it clear or obvious error for the district court to have deduced the seriousness of the firearm problem from the uncontested statistics about the seriousness of the murder rate in Puerto Rico if implicit in that is the idea that the imagined guns are being used in a substantial number of those murders, which seems, based on just knowledge, I would expect that is probably the case. May I answer that? Again, based on, the court is absolutely right concerning what, it just hasn't been, it hasn't been, but we stick to the argument that just out of the unsimilarity between, between what the court considered vis-a-vis what the offense for which the defendant amounted to a guilty, because of that dissimilarity, it is a problem. Thank you. Dissimilarity. Dissimilarity. Dissimilarity. It was a problem. Thank you. If the court has no further questions. Thank you, counsel. Would counsel for the government please introduce herself on the record to begin? But I'd ask you to pause for one second. We have some people coming in, judge. Good morning. May it please the court, Jennifer Velez from the United States. The United States asks that this court affirm the upward theory incentives for the firearm count in this case. First, to start, both of the claims of error that the defense counsel brings up are waived. First, the procedural error about considering the murder rates to inform the community characteristics was not raised below. And so it should be reviewed for plain error. And the concerns of possession claim of error, although it was raised below, it was not in the public's opening brief. And so it is also waived. Also, he does not argue that the court's finding that it was contractually possessed was for clear error. And that is what this court will need to find. We do not think that first, apart from the fact that it was waived, it was admitted by the defendant below in the change of plea. But the defendant admits to aiding and abetting in the possession of both of the firearms. And second, even if that admission hadn't been on the record, which it is, and the court can rely on it, there's ample evidence on the PSR, it could be relied on by the court to reach the finding of fact that it was constructively possessed. What specifically? What are you relying on? What are the court people relying on? Well, from the facts of the PSR, we know that the fugitive, which was the co-defendant of Mr. Rosario, runs up the stairs into the apartment. And there's police that follow him to the apartment, and there's a policeman that goes around the back of the apartment. And after he enters, police that is behind me, like by the window, sees the defendant throwing a certain number of items. And those are the ones that Mr. Rosario says that cannot be attributed to him. But, first of all, there were the accusation for the block that Mr. Rosario was inside the apartment, is found with the items that are tossed by the co-defendant. And additionally, ammunition from the firearm that was tossed outside, which was a FN Hersta pistol with 5.7 millimeters, is found inside the apartment with all the other items that Mr. Rosario admits to possessing.  Which includes 113 vials of crack cocaine, which are found inside the apartment, and 30-something that are found outside with all of the tossed items. The PSR also includes a truce responsibility for the fentanyl, which is an account that he was dismissed, and he did not accept responsibility for, and those items were tossed outside the apartment. He did not object to that in the PSR, so it was fair for the judge to conclude that all these were part of the same conduct. And one of the cases that we cite in our brief on constructive possession says that when there are... Well, regardless, you want us to stop at the aiding and abetting argument. I'm sorry? I said, regardless, you want us to stop at the admission that he aided and abetted. Yes. And not go any further on the right-hand decision. That's correct. And with regards to his other claim of error, it's not that community factors are an impermissible basis. It's only when the court is only relying on community factors, that this court has found it cannot use that as a basis to vary upwards. And here, the court is supposed to be stated in multiple reasons, all based on the characteristics of the defendant and of the offense, to justify the upward variance. You know, one piece of it, I think, they make the argument that their reliance on the murder rate is too dissimilar, but if we read the idea that trying to get at how serious a firearm problem is by looking at the murder rate, one thing that's just a little odd to me is that the comparison initially is between federal offenses nationwide and the firearms offenses, and firearms offenses in Puerto Rico. And it says that the 11% firearm offense comes from 11% of federal offenses nationwide, and 18% of firearm offenses in Puerto Rico, which is nothing but 7% higher. But then he says he's going to look at what is the percentage of firearm offenses relative to other districts in the First Circuit. Why is that irrelevant? Baseline comparison for purposes of disregarding Well, in this instance, the guideline is the reference of the minimum statute, the statutory minimum, which is 16%. But I'm saying, why would the unit of comparison for purposes of deviating from a nationwide guideline ever be, how does it compare to Maine, New Hampshire, Rhode Island, Massachusetts? Suppose it was much worse in Puerto Rico than those four states. Why would that tell you that, therefore, the guideline is off, since there's 46 other states? Well, the government's memorandum has the stats for the nationwide comparison. Yeah, and he said, but the thing is that's a little bit concerning is the difference between the nationwide comparison in Puerto Rico is not trivial. But it's nothing like the discrepancy between the murder rate in Puerto Rico and the other jurisdictions in the First Circuit. But I don't really understand why, for purposes of deciding whether to deviate from the guideline, which is nationwide, one should care about how Puerto Rico compares to other jurisdictions in the First Circuit. Is there some reason to care about that unit of comparison? I think, no, I think it's just based on the, I think he was trying to make a distinction based on the case law of the circuit, how the community characteristics in this particular community are different from the other states in the circuit. My concern is that if a district judge has the misimpression that a reason to deviate from the nationwide guideline is that Puerto Rico has a more serious crime problem than states in New England, that wouldn't be a very good reason to deviate from the nationwide guideline, would it? Well, I think if we look at what the judge specifically said and what was in the government sentencing memorandum, it gives them a complete picture. In the sentencing memorandum, the government cited that the average of 20 murders per 100,000 people in Puerto Rico compared to five people nationwide, so there was still a very large, it was four times... It's just that that's not what he relies on in explaining why he's not going to, why he thinks the guideline is underselling.  Then he seems to be comparing Puerto Rico to the other jurisdictions in the First Circuit. I just don't understand the relevance of the second comparison. My best guess is that he was trying to complete the statistics that were in the sentencing memorandum and distinguishing it from the other states in the circuit, but I do think it's important to look at the other statistics that the government cited in the sentencing memorandum, where there is a specific tie between firearms being the main mechanism for violent deaths on the island. It's as high as 90% for men and almost 70% for women, and this is based on Puerto Rico Institute of Statistics. Additionally, the government cited Puerto Rico Police Bureau statistics that showed that drugs were the leading cause of murders on the island, constituting almost 50% of the murders. So there was a stronger link in this case where you have drugs and furtherance of drug trafficking and the murder rate, and we think that that's one of the reasons why it wasn't an error. But it was also, as this court has said, only one of the reasons on which the court relied to upwardly vary. It went to deterrence, but the court goes on to explain what in the nature and circumstances of the offense justified the upward variance, and that is the fact that it was a machine gun, and that is not factored into the guideline in this case, which this court has said the count of conviction for the 924C1 only includes possession of a single firearm. So all of the things that the judge discusses under the nature and circumstances of the offense are aggravators in this instance. The machine gun, the fact that he had 107 rounds of ammunition, the four magazines, and additionally the second gun that was constructively possessed. If the court has no further questions, we rest our case. Thank you, counsel. Counsel for the appellant has a two-minute rebuttal. Please reintroduce yourself on the record to begin. So that is for defendant appellant. Briefly want to touch on two things concerning the constructive finding of the district court. I believe I heard sister counsel say that upon the agents going to the part of the apartment, the agent saw the defendant throwing out the window some other contraband firearms or drugs. And it never was the defendant appellant. The PSR makes reference, again, to the co-defendant. And the importance of my previous argument is precisely the fact that in the PSR, in the nature of the offense, the layout of the apartment based on the agents going to the apartment was that there are two rooms and they merely see the defendant appellant coming out from the back part of the apartment as well as the co-defendant, but never states that they were in the same bedroom or in the same place where the agents that were in the back part of the apartment saw the throwing out of the firearm or additional control substances. And the second thing is the defendant appellant acknowledges that under Flores-Marchicote, the court may rely on community-based factors. But again, when you see the sentencing transcript in the appendix, the analysis in which the district court delves into when considering the upward variance, there's no issue with the guidelines calculations in this case. It's merely the upward variance. And the court's reasoning to upwardly vary from the sentence that was argued by the defendant to more than 30 months. And so based on those reasons, we would ask to vacate and amend for three sentences. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.